```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


NEGUS THOMAS,                  :  CIVIL NO. 3:15cv1602(AWT)
                               :
          Petitioner,          :
                               :
     v.                        :
                               :
UNITED STATES OF AMERICA,      :
                               :
          Respondent.          :
```

**RULING ON PETITION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Negus Thomas, proceeding pro se, filed a Petition Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, Correct Sentence by a Person in Federal Custody (the "Petition") (Doc. No. 1) in which he set forth two claims for relief. His first ground for relief ("Claim One") is that he was never arraigned on the initial indictment and therefore the court lacked jurisdiction to try him on the charges contained in the Superseding Indictment. His second ground for relief ("Claim Two") is that his conviction should be vacated because of prosecutorial vindictiveness. On July 18, 2016 the petitioner moved for leave to supplement the Petition, and the court granted that motion. The petitioner set forth three additional grounds for relief in his Motion for Leave to Supplement 2255 ("the Supplemental Petition") (Doc. No. 10). The petitioner's third ground for relief ("Claim Three") is that there was

insufficient evidence to convict him on the narcotics conspiracy charged in Count One of the Superseding Indictment. His fourth ground for relief ("Claim Four") is that the government constructively amended the indictment in its closing argument. Finally, the petitioner's fifth ground for relief ("Claim Five") is that he is entitled to a two-level reduction in determining his total offense level under the Sentencing Guidelines, pursuant to 18 U.S.C. § 3582(c)(2).

For the reasons set forth below, his petition, as amended, is being denied without a hearing.

## I. LEGAL STANDARD

A "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted). Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495 (1962).

2

In making its determination regarding the necessity for a hearing, a district court may draw upon its personal knowledge and recollection of the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). Thus, a § 2255 petition, or any part of it, may be dismissed without a hearing if, after a review of the record, the court determines that the motion is without merit because the allegations are insufficient as a matter of law.

**II. DISCUSSION**

**A. Claim One**

The petitioner contends that he was never arraigned on the initial indictment and, therefore, the court lacked jurisdiction to try him on the charges in the Superseding Indictment. However the docket sheet in the criminal case shows that the petitioner was presented and arraigned on the initial indictment. The docket sheet reflects that the petitioner was arrested on March 14, 2014 and that his initial presentment was held that day and he was detained.

Federal Rule of Criminal Procedure 10 sets forth the requirements with respect to an arraignment:

- **(a) In General.** An arraignment must be conducted in open court and must consist of:

    **(1)** ensuring that the defendant has a copy of the indictment or information;

> **(2)** reading the indictment or information to the defendant or stating to the defendant the substance of the charge; and then
>
> **(3)** asking the defendant to plead to the indictment or information.

Fed. R. Crim. P. 10. There are six entries on the docket sheet for March 18, 2002. The third entry contains the following language: "PLEA entered by Negus Thomas. Not Guilty: Negus Thomas (1) count(s) 1, 4, 10 Court accepts plea." There is also a motion by the petitioner for bond, which was denied, and a scheduling order was entered that day. See Docket Entry No. 37.

Thus the record shows that the petitioner was presented and arraigned on the initial indictment, so this claim lacks merit.

### B. Claim Two

The petitioner argues that his conviction should be vacated because of prosecutorial vindictiveness. The petitioner was charged in the initial indictment in Counts One, Four and Ten with narcotics offenses. Count One charged that from May 16, 2001, until about March 11, 2002, the petitioner, Jerkeno Wallace and eight others conspired to possesses with intent to distribute and did distribute 50 grams or more of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) and 846. Count Four charged that on February 11, 2002, the petitioner aided and abetted Kimberly Cruze in the distribution of a quantity of cocaine base in violation of 21

4

U.S.C. § 841(b)(1)(C) and 18 U.S.C. § 2. Count Ten charged that from about February 5, 2002, until about March 11, 2002, the petitioner and Kimberly Cruze operated a drug distribution outlet from their residence on the first floor of 81-83 Edgewood Street, Hartford, Connecticut, in violation of 21 U.S.C. § 856(a)(2).

The Superseding Indictment was returned on July 9, 2002 and it contained four new charges against the petitioner and co-defendant Jerkeno Wallace. Count Eleven charged that on May 16, 2001, the petitioner and Wallace conspired to use a firearm in furtherance of a drug trafficking crime (the conspiracy charged in Count One) and/or a crime of violence (the drive-by shooting charged in Count Twelve) in violation of 18 U.S.C. §§ 924(o). Count Twelve charged that on May 16, 2001, the petitioner and Wallace, aided and abetted by each other, in furtherance of a major drug offense (the conspiracy charged in Count One), with malice aforethought, and with premeditation, and with intent to intimidate, injure, and maim, fired a weapon into a group of persons, and in so doing, intentionally committed a first degree murder in violation of 18 U.S.C. §§ 36(b)(2)(A), 1111(a) and 2. Count Thirteen charged that on May 16, 2001, the petitioner and Wallace, aided and abetted by one another, during and in relation to a drug trafficking crime (the conspiracy charged in Count One), discharged a firearm and, in so doing, murdered Gil

5

Torres, in violation of 18 U.S.C. §§ 924(j)(1), 924(c)(1)(A)(iii) and 2. Count Fourteen charged that on May 16, 2001, the petitioner and Wallace, aided and abetted by one another, during and in relation to a crime of violence (the drive-by shooting charged in Count Twelve), discharged a firearm that resulted in the first degree murder of Gil Torres, again in violation of 18 U.S.C. §§ 924(j)(1), 924(c)(1)(A)(iii) and 2.

The petitioner argues that the new charges in the Superseding Indictment were brought against him to penalize him for seeking to go to trial on the charges in the initial indictment. "[T]he decision as to whether to prosecute generally rests within the broad discretion of the prosecutor," and a prosecutor's pretrial decision is presumed legitimate. United States v. White, 972 F.2d 16, 19 (2d Cir. 1992). However, a prosecution brought with a vindictive motive, such as exercise of authority motivated to penalize a defendant for the valid exercise of a constitutional or statutory right to an appeal or habeas proceeding is prohibited by the Due Process Clause of the Fourteenth Amendment. See Blackledge v. Perry, 417 U.S. 21, 24-26 (1974). To establish actual vindictive motive, the defendant "must show that '(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a "stalking horse," and (2) [the

6

defendant] would not have been prosecuted but for the animus.'" United States v. Koh, 199 F.3d 632, 640 (2d Cir. 1999). "[A] finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'" United States v. Johnson, 171 F.3d 139, 140 (2d Cir. 1999). "A presumption of vindictiveness arises when "the circumstances of the case create a 'realistic likelihood' of prosecutorial vindictiveness." Id. at 141.

The petitioner does not make any factual allegations that could support a conclusion that the government harbored any animus towards him. Nor does he produce any evidence, direct or circumstantial, that the charging decision reflected by the Superseding Indictment was an unjustifiable penalty imposed because the petitioner exercised his right to plead not guilty. The Superseding Indictment was returned less than four months after the petitioner was arraigned on the initial indictment. The government states that during this period the government developed cooperating witnesses who agreed to testify about the petitioner's involvement in the murder of Gil Torres and once this evidence was obtained, the government obtained the Superseding Indictment. As detailed in the United States' Response to Defendants' Motion for Judgment of Acquittal and for New Trial (Doc. No. 512 in Case Number 3:02cr72 (AWT))("Response to Mot. for Acquittal"), those cooperating witnesses did in fact

7

testify at trial with respect to the petitioner's involvement in the murder of Gil Torres. Moreover, a witness who was inarguably a key witness with respect to the charges added in the Superseding Indictment pled guilty and entered into a cooperation agreement with the government shortly before the Superseding Indictment was returned.

The petitioner merely asserts that because he had pled not guilty and a superseding indictment with additional charges was returned, that superseding indictment must have been motivated by prosecutorial vindictiveness. However, that is not sufficient. Moreover, the defendant has not even met the standard for showing that he is entitled to obtain discovery on a claim of vindictive prosecution. See United States v. Sanders, 211 F.3d 711, 717 (2nd Cir. 2000)("the defendant must show 'some evidence' of 'genuine animus,' not the mere possibility that animus might exist under the circumstances").

**C. Claims Three and Four**

In Claim Three the petitioner argues that there was insufficient evidence to convict him of engaging in the narcotics conspiracy charged in Count One. He states: "Petitioner's argument is that he sold drugs by himself and did not sell drugs or conspire to distribute drugs with any of the other defendants." Supplemental Petition at 6. The petitioner made this argument in his motion for judgment of acquittal and

for a new trial, but the court agreed with the government's analysis as to why the petitioner's argument lacked merit. See Response to Mot. for Acquittal at pp. 20-23. Also, on appeal the petitioner argued that "[t]he trial court erred in denying Thomas' Rule 29 Motion for Judgment of Acquittal, which was based upon the insufficiency of the evidence to support the conviction." Brief of the Appellant, Negus Thomas (Doc. No. 12-1) at 30 of 109.

In Claim Four the petitioner argues that the government constructively amended the indictment in its closing argument. The petitioner contends that "[i]n the instant case during closing arguments the prosecutor for the government argued that the agreement of the conspiracy was, the defendants conspired to distribute the drugs from the location of 81-83 Edgewood Street. . . . The notion of the defendants distributing drugs from the location of 81-83 Edgewood Street Constructively Amends the charge brought down by the Grand Jury." Supplemental Petition at 14. The petitioner raised this argument on appeal. See Brief of the Appellant, Negus Thomas (Doc. 12-1) at pp. 77 to 78.

The petitioner's conviction was affirmed with respect to all counts except Counts Thirteen and Fourteen, which were remanded for the court to exercise its discretion to vacate the conviction on one of the counts. See Summary Order, United

States v. Wallace, 178 Fed.Appx. 76 (2006); United States v. Wallace, 447 F.3d 184 (2d Cir. 2006). Thus, Claim Three and Claim Four are barred because a habeas motion may not be used "to relitigate issues that were raised and considered on direct appeal." United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997). See also United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977) (per curiam) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack".) (citations omitted). This rule "prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010).

**D. Claim Five**

The petitioner states that "[o]n June 2, 2014 the United States Sentencing Commission (U.S.S.C.) voted unanimously to amend the federal sentencing guidelines for drug offenders by reducing the guideline level by 2-points. In other words the base offense level for a specific drug quantity will now be two points lower." Supplemental Petition at 2. Based on that fact the petitioner seeks a two-level reduction for purposes of his Guidelines calculation. However, the petitioner is ineligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) because

10

the amendment to the Sentencing Guidelines for "crack" cocaine did not have the effect of lowering his Guidelines range.

In <u>Dillon v. United States</u>, 130 S. Ct. 2683 (2010), the Supreme Court discussed the two-step approach for application of a retroactive amendment to the Sentencing Guidelines. With respect to the first step, the Court stated:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, § 1B1.10 (b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection [(d)] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected."

<u>Id.</u> at 2691.

Here the Presentence Report reflects that the petitioner's base offense level was not calculated based on the quantity of narcotics involved in accordance with § 2D1.1, but rather by a cross-reference to U.S.S.G. § 2A1.1, due to the death of Gil Torres. The Presentence Report states:

> Base Offense Level: Guideline § 3D1.3(a) states that in the case of counts grouped together pursuant to § 3D1.3(a)-(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, <u>i.e.</u>, the highest offense level of the counts in the Group. The highest level in this Group is Count 12, Drive-by Shooting, Murder, and Aiding and Abetting. The guideline for 18 U.S.C. § 36 is found in Guideline § 2D1.1. Section 2D1.1(d)(1) states that if a victim was killed under circumstances that would constitute murder under 18 U.S.C. §

11

1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder). Section 2A1.1(a) establishes a base offense level 43 for First Degree Murder.

Presentence Report ¶ 53.

Thus the amendment to the "crack" cocaine Guidelines "does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision." U.S.S.G. § 1B1.10, Comment, n.1(A). Consequently, the petitioner cannot receive a reduction under § 3582(c) because his total offense level was based on the guideline for first degree murder, i.e. U.S.S.G. § 2A1.1, and not on the type and quantity of the drugs involved in the crimes of conviction. See United States v. Tyler, 328 Fed. App'x 735, 735 (2d Cir. 2009) (Tyler not entitled to reduction under Section 3582(c) "because Tyler's applicable Guidelines offense level at his initial sentencing was based on the murder of Lanny Dillard, and the sentencing range under which Tyler was sentenced was not subsequently lowered by the crack cocaine amendments.")

## III. CONCLUSION

The Petition Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 1) as amended by the Motion for Leave to Supplement 2255 (Doc. No. 10) is hereby DENIED. The court will not issue a certificate of appealability because the petitioner has not made a substantial

12

showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

The Clerk shall close this case.

It is so ordered.

Signed this 26th day of April 2017, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
